Patrick H. Dwyer, SBN 137743
P.O. Box 1705, Penn Valley, CA 95946
Tel: (530) 432-5407; Fax: (530) 432-9122
Email: pdwyer@pdwyerlaw.com
Attorney for Plaintiff John David Peterson

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

John David Peterson, an individual,

    Plaintiff

       v.

Nevada County, California, a county

    government and operator of the

Nevada County Sheriff's Department;

    and the following persons both as

    individuals and in their capacity as

    officials, employees or contractors

    of Nevada County:

Sheriff Keith Royal; and

Does 1 through 10; and

Correctional Medical Group

    Companies, Inc.; and its personnel

Does 11 through 20; and

The City of Grass Valley, a

    municipality and the operator of the

    Grass Valley Police Department; and

    the following person, both as an

    individual and in their capacity as

    an employee thereof,

Officer Doe 21, and

Does 22 through 25,

    Defendants.

CASE NO.: 2:19-CV-0949-JAM-EFB

**FIRST AMENDED COMPLAINT FOR INDIVIDUAL, SUPERVISORY, AND MUNICIPAL VIOLATIONS OF 42 U.S.C. §1983; STATE LAW CLAIMS FOR INTENTIONAL INFLICTION OF PAIN AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, VIOLATIONS OF CALIFORNIA CIVIL CODE §52, RESPONDEAT SUPERIOR LIABILITY AND MEDICAL MALPRACTICE**

**JURY TRIAL DEMANDED**

# I.
# INTRODUCTION

This is a civil rights action arising out of the deliberate indifference to the serious medical condition of Plaintiff John David Peterson by Nevada County Sheriff's Department ("NCSD") and Correctional Medical Group Companies, Inc. ("CMGC") and their respective personnel.  Plaintiff, who suffered injury to his leg while being arrested by the City of Grass Valley Police Department ("GVPD"), was subsequently housed at the Nevada County jail.  While at the jail he developed a life threatening bone infection as a result of the injury to his leg.  He was examined by CMGC medical personnel, but instead of being sent for emergency medical care at the local hospital, Sierra Nevada Memorial Hospital ("SNMH"), Defendants NCSD and CMGC simply dumped Plaintiff out the door of the jail and left him to fend for himself.  Plaintiff, who could barely walk, made it to the nearest gas station where he collapsed.  Plaintiff was transported by ambulance to SNMH where he underwent emergency surgeries and treatment for a bone infection for about 45 days.  Fortunately, Plaintiff survived and has recovered.

# II.
# JURISDICTION AND VENUE

1.      Jurisdiction over the federal causes of action under Title 42 U.S.C. §1983 are proper in this Court under 28 U.S.C. §1331.  Pendant Jurisdiction over the state causes of action is proper under Title 28 U.S.C. §1367(a) and Title 28 U.S.C. §1343(a)(3).

2.      Venue is proper in this Court under 28 U.S.C. §1391(b) because all of the defendants reside, and the acts complained of occurred, within the territorial boundaries of this United States District Court.

3.      Intra-district venue is proper in the Sacramento Division of this Court under Local Rule 120(d) because the acts and omissions that are the basis of this

complaint occurred within Nevada County.

### III.
### PARTIES

4.    Plaintiff John David Peterson ("Peterson") was a single male, age 38 at the time of the events alleged in this Complaint.  As of the date of filing of this Complaint, Plaintiff Peterson resides at 275 Dorsey Drive, Apt. 51, Grass Valley, CA 95945.

5.    Defendant Nevada County, California, established and operates the Nevada County Sheriff's Department ("NCSD") which is responsible for the staffing and operation of the Jail at 925 Maidu Ave, Nevada City, CA 95959 ("Jail", aka Wayne Brown Correctional Facility).  Plaintiff is informed and believes, and on that basis alleges, that the NCSD contracts with Correctional Medical Group Companies, Inc. to provide medical care to the inmates at the Jail.  The NCSD employs and/or contracts with Does 1-10 as deputies and/or correctional officers.

6.    Defendant Keith Royal ("Royal") was the Sheriff and in command of the NCSD at the time of the incidents alleged below.

7.    Defendant City of Grass Valley, California, established and operates the Grass Valley Police Department ("GVPD") which employs or contracts with individuals to serve as police officers.  The GVPD employs and/or contracts with Doe 21 as a police officer.

8.    Defendant Correctional Medical Group Companies, Inc. is a Delaware corporation qualified to do business in California (Corporation No. C3521984) with its principal executive office located at 3911 Sorrento Valley Boulevard, Suite 130, San Diego, CA 92121, and its principal business office at 2511 Garden Road, Suite A160, Monterey, CA 93940.  Plaintiff is informed and believes, and on that basis alleges, that Correctional Medical Group Companies, Inc. either owns and/or

controls a business in California named California Forensic Medical Group, Inc. or CFMG, Inc. (Corporation No. C1054341 FTB suspended), such that these two corporate entities are the alter ego of each other (collectively "CMGC").  Plaintiff is further informed and believes, and on that basis alleges, that Defendant Nevada County has had a contract with CMGC (or its alter ego CFMG) to provide medical services for detainees and inmates at the Jail at all relevant times to this Complaint.  CMGC employs and/or contracts with Does 11-20.

9.      The true names and capacities of defendants sued herein as Does 1-25, inclusive, whether individual, corporate, or otherwise are unknown to Plaintiff who, therefore sues such defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will amend this complaint by asserting their true names and capacities herein.  Plaintiff is informed, believes and thereon alleges, that at all times herein mentioned, all defendants, including Does 1-25, inclusive: (i) are qualified to do business in California, and/or did, in fact, do business in California; (ii) jointly perpetrated the acts herein with their co-defendants; (iii) were the successors in interest to, or agents, alter egos, principals, co-tenants, partners, joint venturers, or co-conspirators of their co-defendants in doing the things herein alleged; and/or (iv) were acting within the scope of their authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their co-defendants in doing the things herein alleged, and therefore are liable, jointly and severally, for all damages and other relief or remedies sought by complainants in this action.

## IV.
### BACKGROUND ALLEGATIONS

#### Duties of Nevada County, the NCSD, and CMGC

10.     Defendants Nevada County and the NCSD are obligated to have policies, practices, and procedures to provide timely and effective response to the medical

4

needs of inmates ("PPPs").

11.    Defendants Nevada County and the NCSD are obligated to adequately train their deputy sheriffs and other correctional officers in the timely and effective response to the medical needs of inmates.

12.    Defendants Nevada County and the NCSD are obligated to adequately supervise their deputy sheriffs and correctional officers to verify the effectiveness and enforcement of the PPPs and training in the timely and effective response to the medical needs of  detainees and inmates.

13.    Defendants Nevada County and the NCSD are obligated to have an adequate and effective "Chain of Command" so that when incidents involving the inadequate provision of medical services occur, NCSD operational management learns about the incident and can take timely corrective action.

14.    Defendants Nevada County and NCSD personnel are obligated to prepare complete and truthful Incident Reports about the provision of effective medical care for a detainee or inmate that has sustained a serious injury.

15.    Defendant CMGC, as a contractor to Defendant Nevada County for medical services for all detainees and inmates at the Jail, is a state actor performing this traditionally governmental function.  Consequently, CMGC is obligated to either follow the PPPs adopted by Defendants Nevada County and the NCSD for providing medical services and/or to have its own comparable policies, practices, and procedures for medical services that meet the same constitutional standards.

16.    The obligations and duties set forth in paragraphs 11-15 will hereafter be collectively referred to as the "Supervisory Duties".

17.    The personnel employed by Defendant CMGC to perform its medical services at the Jail are state actors performing this traditional governmental function. Consequently, CMGC personnel are obligated to perform their medical service

1  duties in a manner that meets constitutional standards.

2  18.   Defendants Nevada County and the NCSD maintain a video surveillance

3  system at the Jail ("VSS").  Plaintiff is informed and believes, and on that basis

4  alleges, that the VSS was installed, in part, to verify that the PPPs are being

5  followed, that training has been adequate, and that supervisors are monitoring the

6  conduct of deputies and correctional officers in the provision of timely and effective

7  medical response for all inmates.  Plaintiff is further informed and believes, and on

8  that basis alleges, that the VSS also provides a ready means for the NCSD to

9  investigate and prepare Incident Reports about the provision of medical care at the

10  Jail.

11  **The Unlawful Use of Force**

12  19.   On or about September 5, 2018, Plaintiff was placed under arrest by GVPD

13  officers Butler, Ball, and a third unnamed officer at approximately 1 to 2 pm

14  (possibly as late as 3 pm).  After Plaintiff was handcuffed by these three GVPD

15  officers, Plaintiff was taken to the emergency room at Sierra Nevada Memorial

16  Hospital ("SNMH") for a medical assessment.  After being in the SNMH emergency

17  room area for approximately 20 minutes, a fourth GVPD officer arrived.  Plaintiff

18  does not recall his name, so this officer will be referred to as Defendant Doe 21.

19  20.   Shortly after arriving in the ER area of SNMH, Plaintiff was trying to show

20  officers Butler, Ball, and the unnamed third officer that his right lower leg/ankle

21  had been surgically repaired a few years prior and now had a steel plate and screws

22  to hold it together.  While handcuffed, Plaintiff used his left foot to step on the sock

23  on his right foot to pull his sock off and show the three Grass Valley Police officers

24  his scar.  When a fourth Grass Valley Police Officer, Defendant Doe 21 arrived, he

25  looked at Plaintiff's ankle and said that he would like to see Plaintiff get his sock

26  back on.  Plaintiff reached down and attempted, with cuffed hands, to pull his sock

27

28

back on.  Defendant Doe 21 then approached Plaintiff and grabbed his arm, pulling him out of the chair he had been sitting in.  Defendant Doe 21 then pulled Plaintiff into the air and caused him to fall head first onto the floor.  Defendant Doe 21 then had Plaintiff upside down with his head and right shoulder on the floor and his feet in the air.  Defendant Doe 21 then began pushing down on Plaintiff's right foot (the one with the steel plate) trying to shove Plaintiff's leg back through the handcuffs.  Plaintiff did not bad mouth any of the officers and Plaintiff never resisted, but Plaintiff did yell in pain about his right ankle.

21.     While Defendant Doe 21 was trying to push Plaintiff's leg back through the cuffs, Plaintiff asked him to stop, sit Plaintiff in the chair and take off the cuffs, adjust Plaintiff's leg, and then put the cuffs back on Plaintiff.  Defendant Doe 21 said "no" and that he was going to do it his way.  Plaintiff told him about his steel plate and screws and that what he was trying to do was stressing Plaintiff's leg and ankle.  Plaintiff told Defendant Doe 21 that his approach was not going to work and that he should stop torturing Plaintiff.  Defendant Doe 21 then put Plaintiff into the chair and told Plaintiff to get his leg back through the hand cuffs.  Plaintiff tried, but could not and Plaintiff asked him again to just un-cuff and then re-cuff him, but Defendant Doe 21 refused.  Instead, Defendant Doe 21 pulled Plaintiff up out of the chair and began trying to force Plaintiff's right leg through his handcuffed hands.  Plaintiff recalls him trying to force his leg through the handcuffs several times, but Defendant Doe 21 failed.

22.     Finally, GVPD officer Butler stopped Defendant Doe 21 and said something close to: "how about we just do this: un-cuff him and re-cuff him".  Officer Butler then did this and it took only a few seconds to resolve the problem.  After this, Officers Butler, Ball, and the unnamed GVPD officer told Defendant Doe 21 something to the effect of: "go home and take the rest of the day off".

**The Failure to Provide Medical Care**

23.     After approximately another 45 minutes (during which time Plaintiff had his blood drawn at the hospital to test for drugs before he was taken to the jail), Plaintiff was taken by officers Butler and Ball to the Nevada County jail known as Wayne Brown Correctional Facility ("WBCF").

24.     As part of the initial booking, Plaintiff was also seen by a female nurse, named as Defendant Doe 11, while still in the processing area.  Plaintiff told her about the plate and screws in his leg and what had happened with the handcuffs and how Defendant Doe 21 tried to force Plaintiff's leg back through the handcuffs. The nurse examined the leg and said it was okay.  Plaintiff was still able to walk at this time and the leg had not yet started to swell, although there was pain.

25.     After processing was complete, Plaintiff recalls being placed in a cell by himself in the "B" pod on the left side from the podium.  Plaintiff does not recall having a cell mate that night.  On the morning of September 6, 2018, Plaintiff started feeling feverish, but he thought it was maybe a cold or flu coming on. Plaintiff stayed in his cell (alone) that day and overnight.  By the morning of September 7, 2018, around 10 am, Plaintiff was feeling much worse and he told the officers at WBCF that his right knee had been painful since the middle of the night. Sometime around 10:30 to 11:00 am, Plaintiff was taken to the infirmary at WBCF. A nurse, who is named as Defendant Doe 12, took Plaintiff's vitals and arranged for an x-ray to be taken of his leg.  When the x-ray technician was done, the x-ray technician told Plaintiff that the screws had been pulled out of the steel plate on his tibia.  After the x-ray was taken, the nurse Doe 12 did not tell Plaintiff about the nature or extent of the injury and did not arrange for Plaintiff to be taken to the local emergency room at SNMH for treatment.  Further, Nurse Defendant Doe 12 did not give Plaintiff any advice about taking care of the leg or seeking treatment,

1  but simply had Plaintiff return to his cell.

2  26.    At around 12:30 pm, Plaintiff was sent back to his cell to sleep.  After about

3  an hour (to the best of Plaintiff's recollection), Plaintiff was told to roll up his things

4  because he was being released.  When Plaintiff got to the booking area for his

5  release, he asked a male NCSD officer at the desk, named as Defendant Doe 1, if he

6  could use the phone to get a ride from the jail.  Defendant Doe 1 said something to

7  the effect of: "hurry it up".  Plaintiff made two phone calls, but he could not get

8  through to anyone.  Plaintiff did not have money for a taxi.  Plaintiff was processed

9  out by Defendant Doe 1 and released out the back door of the jail (the entrance

10 nearest Highway 49).

11 27.    Although Plaintiff was in great pain and felt very feverish as he was let out of

12 the Jail, Plaintiff walked to the gas station on Sacramento Street, just off the

13 Highway 49 freeway.   That was as far as Plaintiff could go – Plaintiff was too sick

14 and in too much pain.  Plaintiff borrowed a phone and called an ambulance.  A few

15 minutes later, a fire truck arrived and the firemen took Plaintiff's vitals.  Then an

16 ambulance arrived and the EMT crew put Plaintiff on a gurney and into the

17 ambulance.  Plaintiff recalls being told that he had a temperature of over 103.

18 Plaintiff was taken to the emergency room at SNMH where he was diagnosed with

19 a life threatening infection (sepsis) and acute osteomyelitus (bone infection).

20 28.    Plaintiff was in SNMH for approximately the next 45 days.  On about

21 September 12, 2018, the infection became so bad that they had to surgically remove

22 the plate and screws from Plaintiff's leg.  Plaintiff's tibia was left exposed and the

23 surrounding tissue was necrotic. The hospital was not able to do a graft because

24 there was not enough tissue for attachment. There were other surgical procedures

25 during Plaintiff's stay in the hospital.  On or about December 11, 2018, the wound

26 had barely closed and it still had a drain, but Plaintiff was released from SNMH.

27

28                                              9

### The Cover Up

29.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times NCSD Defendants Does 6-10 had full access to the information about the foregoing medical incident, including full access to the VSS.  In addition, Plaintiff is further informed and believes, and on that basis alleges, that despite the obvious fact that the VSS shows the serious nature of Plaintiff's medical condition for an extended period of hours, Defendants Does 6-10 failed to correctly prepare an accurate incident report about Plaintiff's medical emergency, failed to conduct an independent investigation of the response to Plaintiff's medical emergency, and failed to otherwise adequately and properly perform their Supervisory Duties.

### The Timely Filing of a Tort Claim

30.     On or about January 25, 2019, Plaintiff filed a claim against Nevada County for the injuries he suffered as described in paragraphs 20-28.  A true and correct copy of this tort claim is attached hereto as Exhibit 1A.

31.     On or about March 4, 2019, Nevada County served by mail a letter dated February 28, 2019 rejecting Plaintiff's claim.  A true and correct copy of this rejection is attached hereto as Exhibit 1B.

32.     On or about January 30, 2019, Plaintiff filed a claim against The City of Grass Valley for the injuries he suffered as described in paragraphs 20-28.  A true and correct copy of this tort claim is attached hereto as Exhibit 2A.

33.     On or about February 4, 2019, the City of Grass Valley served by mail a letter of rejection of Plaintiff's claim dated February 1, 2019.  A true and correct copy of this rejection is attached hereto as Exhibit 2B.

## FIRST CAUSE OF ACTION

### Defendant Doe 21

### Individual Liability for Violation of Plaintiff's Constitutional Rights Under 42 U.S.C. §1983 (Unlawful Use of Force )

34.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

35.    Defendant GVPD officer Doe 21 committed acts of unprovoked and unwarranted excessive force against Plaintiff as alleged in paragraphs 19-22  in violation of his rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

36.    The foregoing conduct of Defendant Doe 21 constituted acts and omissions under the color of state law that were the direct and proximate cause of the violation of the constitutional rights of Plaintiff Peterson.

37.    As a direct and proximate result of the wrongful conduct of Defendant Doe 21, Plaintiff Peterson sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and psychological care and therapy.

38.    As a direct and proximate result of the foregoing conduct of Defendant Doe 21, Plaintiff Peterson has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

39.    The foregoing acts and omissions of Defendant Doe 21 were committed with unbridled malice that was despicable and done with intentional disregard for

Plaintiff Peterson's physical and mental person.  As a result, punitive damages should be awarded against Defendant Doe 21

## SECOND CAUSE OF ACTION

### Defendants Does 11-15

### Individual Liability for Violation of Plaintiff's Constitutional Rights Under 42 U.S.C. §1983
### (Deliberate and Callous Disregard for Inmate Medical Problems)

40.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

41.    Defendants CMGC nursing personnel Does 11-15 became aware of Plaintiff's need for emergency medical care as alleged in paragraphs 24-28.  However, these defendants deliberately and callously disregarded Plaintiff's emergency medical needs in violation of the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

42.    The foregoing conduct of Defendants Does 11-15 were acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Peterson.

43.    As a direct and proximate result of the wrongful conduct of Defendants Does 11-15, Plaintiff Peterson sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and psychological care and therapy.

44.   As a direct and proximate result of the foregoing conduct of Defendants Does 11-15, Plaintiff Peterson has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

45.   The foregoing acts and omissions of Defendants Does 11-15 were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Peterson's physical and mental person.  As a result, punitive damages should be awarded against Defendants Does 11-15.

### THIRD CAUSE OF ACTION

**Defendants Sheriff Keith Royal and Does 6-10**
**Failure to Perform Supervisory Duties  Under 42 U.S.C. §1983**
**(Supervisory Liability In Their Individual Capacities)**

46.   Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

47.   Defendants Royal and Does 6-10 are Nevada County and/or NCSD employees or contractors that, at all relevant times alleged herein, had responsibility for performing the Supervisory Duties as alleged in paragraph 16, including the supervision of Defendants NCSD officers Does 1-5.

48.   At all relevant times, Defendants Royal and Does 6-10 had all necessary means and opportunity for performing the Supervisory Duties.

49.   Defendant Keith Royal was Nevada County Sheriff from 1998 through 2018. Plaintiff is informed and believes, and on that basis alleges, that during his tenure, the NCSD had an unconstitutional policy and practice of denying and/or delaying significant medical care for inmates that constituted a deliberate and callous indifference to their medical needs.  The purposes of the policy were to save money and punish inmates (beyond deprivation of their physical liberty) by making them endure the pain and debilitation of medical problems.  The policy was not expressly stated, but was effectuated and continued by Defendants Royal and Does 6-10

through acquiescence and/or indifference to the acts and omissions of WBCF personnel, including Defendants NCSD officers Does 1-5.

50. Plaintiff is informed and believes, and on that basis alleges, that Defendants Royal and Does 6-10 further violated the constitutional right of inmates to medical care by the following acts or omissions:

(1) failing to require WBCF correctional personnel to immediately contact supervisory personnel about significant medical incidents;

(2) failing to require WBCF correctional personnel to prepare written reports about serious medical incidents for review by supervisory personnel;

(3) failing to have and/or enforce a policy that inmates must be provided with timely and appropriate medical care;

(4) failing to have and/or enforce a policy that WBCF correctional personnel may not override the medical decisions of the on-site medical provider regarding appropriate medical care and treatment of inmates in accordance with applicable professional medical standards, including whether an inmate should be transferred to an outside medical provider;

(5) tolerating or acquiescing to an attitude among WBCF correctional personnel that inmates are not entitled to medical care at "public expense".

51. Plaintiff is informed and believes, and on that basis alleges, that Defendants Royal and Does 6-10 had personal knowledge of many instances where inmates were knowingly denied adequate medical care, but failed to take immediate action to obtain the appropriate medical care and/or failed to take any corrective disciplinary or corrective supervisory measures over WBCF correctional personnel and/or to initiate any operational changes at WBCF to prevent further constitutional deprivations of inmate rights to medical care.  These many instances included the following specific cases:

(1) As set forth in more detail in the complaint filed in *Howie v. Nevada County, et al*, 2:18-CV-3146, on or about January 11, 2018, Christopher Howie had his leg broken at the WBCF, then was shackled and placed in a cell all night, then medical staff ignored Mr. Howie's serious medical condition and falsified the jail medical records about his condition, then WBCF personnel refused Mr. Howie's repeated request to be taken to an emergency medical room for treatment, and then WBCF personnel physically wheeled Mr. Howie out of the back door of WBCF and left him on the curb outside the jail unable to fend for himself;

(2) As set forth in more detail in the complaint filed in *Cavender v. Nevada County, et al*, 2:19-CV-1050, on or about June 20, 2018, Sonya Cheyenne Cavender was an inmate at WBCF who promptly reported serious medical (stroke) symptoms to WBCF correctional staff, but was treated with indifference for 2-3 hours in her cell until she could no longer walk or support herself, at which time the WBCF correctional staff wheeled Ms. Cavender to a holding cell and placed her on a floor pad for another 2-3 hours until Ms. Cavender was near death, and only then did the WBCF correctional personnel call for an ambulance; and

(3) In 2017 and 2018, Mr. Stephen Woodward was an inmate at WBCF who was denied medical care for a urological problem for over a year until he contacted a lawyer who sent a letter to Nevada County Counsel demanding that Mr. Woodward be sent to a urologist for his medical condition.

52.     Plaintiff is informed and believes, and on that basis alleges, that Defendants Royal and Does 6-10, despite the foregoing specific instances of constitutional deprivation of medical care for inmates (as well as other instances not pleaded here), never took any corrective supervisory action, never changed or instituted the

relevant PPPs (see paragraphs 10-14), and never stopped the practice by WBCF correctional personnel of denying and/or delaying medical care for inmates.

53.     As a consequence of the factual allegations in paragraphs 49-52, Defendants Royal and Does 6-10 failed, in whole or in part, to perform their Supervisory Duties. As a direct consequence of such failure, Plaintiff was denied timely medical services for his serious medical emergency which is a violation of his rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

54.     The foregoing conduct of Defendants Royal and Does 6-10 were acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Peterson.

55.     As a direct and proximate result of the wrongful conduct of Defendants Royal and Does 6-10 as set forth above, Plaintiff Peterson has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and psychological care and therapy.

56.     As a direct and proximate result of the foregoing conduct of Defendants Royal and Does 6-10, Plaintiff Peterson has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

57.     The foregoing acts and omissions of Defendants Royal and Does 6-10 were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Peterson's physical and mental person.  As a result, punitive damages should be awarded against Defendants Royal and Does 6-10.

## FOURTH CAUSE OF ACTION

**Defendant Sheriff Keith Royal**
**Supervisory Liability In His Official Capacity Under 42 U.S.C. §1983**
**(Failure to Lawfully Administer the Jail)**

58.     Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

59.     Defendant Royal, as Sheriff of Nevada County, represented Nevada County in an official capacity and was administratively responsible for instituting adequate PPPs and then the training, monitoring, and enforcement thereof as alleged in paragraphs 10-14 to provide for the timely and effective care of inmate medical needs at WBCF.

60.     Despite his responsibility for these official capacities and duties, Defendant Royal acquiesced in and/or was deliberately indifferent to the medical needs of inmates at WBCF as exemplified by the acts and omissions set forth in paragraphs 49-52.

61.     The foregoing conduct of Defendant Royal, as Sheriff, constituted acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Peterson.

62.     As a direct and proximate result of the wrongful conduct of Defendant Royal as set forth above, Plaintiff Peterson has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and

psychological care and therapy.

63.    As a direct and proximate result of the foregoing conduct of Defendant Royal, as Sheriff, Plaintiff Peterson has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

64.    The foregoing acts and omissions of Defendant Royal, as Sheriff, were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Peterson's physical and mental person.  As a result, punitive damages should be awarded against Defendant Royal.

**FIFTH CAUSE OF ACTION**

**Defendant Nevada County**
**Municipal Liability for Violation of Plaintiff's Constitutional Rights**
**(Deliberate and Callous Disregard for Inmate Medical Problems)**

65.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

66.    Defendant Nevada County has failed to adequately establish policies and procedures regarding the timely and effective provision of medical services for inmates that are adequate for protecting the right of inmates to medical care as alleged in paragraphs 10-14.

67.    Defendant Nevada County has failed to adequately train its personnel regarding the timely and effective provision of medical care for inmates as alleged in paragraphs 10-14.

68.    Defendant Nevada County has failed to adequately monitor or enforce policies and procedures for the timely and effective provision of medical care for inmates as alleged in paragraphs 10-14.

69.    Defendant Nevada County has failed to adequately supervise its personnel regarding the timely and effective provision of medical care for inmates as alleged in paragraphs 10-14.

70.     Plaintiff is informed and believes, and on that basis alleges, that Nevada County has had an unconstitutional policy and/or practice of denying and/or delaying medical care at the WBCF that constituted a deliberate and callous indifference to the medical needs of inmates as described in paragraphs 49-52.

71.     Plaintiff is informed and believes, and on that basis alleges, that there have been other instances of deliberate and callous indifference by Defendant Nevada County to the medical needs of inmates in addition to those set forth in paragraphs 49-52.  Together, all of these instances of deliberate and callous indifference to medical needs of inmates demonstrate a persistent pattern of wrongful conduct by Defendant Nevada County.

72.     It was known and/or obvious to Defendant Nevada County that the acts and omissions described in paragraphs 49–52 and 66-69 would be likely to cause serious violation of the constitutional rights of inmates to timely and effective medical care.

73.     The acts and omissions in paragraphs 49–52 and 66-69 were done under the color of state law and they were the direct and proximate cause of the violation of the constitutional rights of Plaintiff.  These acts and omissions continued for at least a year prior to the institution of this action and Plaintiff is informed and believes, and on that basis alleges, that these acts and omissions continue until the present time.  As a consequence, Defendant Nevada County's acts and omissions in paragraphs 49–52 and 66-69 constitute deliberate indifference to, and a callous disregard for, the constitutional rights of inmates in the Nevada County Jail.

74.     As a direct and proximate result of the wrongful acts and omissions of Defendant Nevada County as set forth above, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force

while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and psychological care and therapy.

75.     As a direct and proximate result of the foregoing conduct of Defendant Nevada County, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

## SIXTH CAUSE OF ACTION

### Defendants CMGC Supervisory Personnel Does 16-20

### Failure to Perform Supervisory Duties  Under 42 U.S.C. §1983
(Supervisory Liability In Their Individual Capacities)

76.     Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

77.     Defendants CMGC personnel Does 16-20 are CMGC employees or contractors that at all relevant times alleged herein, had responsibility for performing the Supervisory Duties as alleged in paragraphs 15-17, including the supervision of Defendants CMGC medical personnel Does 10-15.

78.     At all relevant times, Defendants Does 16-20 had all necessary means and opportunity for performing the Supervisory Duties.

79.     Plaintiff is informed and believes, and on that basis alleges, that Defendants Does 16-20 had an unconstitutional policy and practice of denying and/or delaying significant medical care that constituted a deliberate and callous indifference to the medical needs of inmates.  The purposes of the policy were to save money and punish inmates (beyond deprivation of their physical liberty) by making them endure the pain and debilitation of medical problems.  The policy was not expressly

stated, but was effectuated and continued by Defendants Does 16-20 through acquiescence and/or indifference to the acts and omissions of CMGC personnel at WBCF, including Defendants Does 16-20.

80.     Plaintiff is informed and believes, and on that basis alleges, that Defendants Does 16-20 further violated the constitutional right of inmates to medical care by the following acts or omissions:

(1) failing to require CMGC jail medical personnel to immediately contact supervisory personnel about significant medical incidents;

(2) failing to require CMGC jail medical personnel to prepare written reports about serious medical incidents for review by supervisory personnel;

(3) failing to have and/or enforce a policy that inmates must be provided with timely and appropriate medical care;

(4) failing to have and/or enforce a policy that the decisions of CMGC jail medical personnel regarding appropriate medical care and treatment of inmates in accordance with applicable professional medical standards, including whether an inmate should be transferred to an outside medical provider may not be overridden by WBCF correctional personnel; and

(5) tolerating or acquiescing to an attitude among both WBCF correctional personnel and CMGC jail personnel that inmates are not entitled to medical care at "public expense".

81.     Plaintiff is informed and believes, and on that basis alleges, that Defendants Does 16-20 had personal knowledge over the years of many instances where inmates were knowingly denied medical care and Defendants Does 16-20 either took no immediate action to obtain medical care for these inmates and/or failed to take any corrective disciplinary or corrective supervisory measures over CMGC jail personnel or to initiate any operational changes to correct the constitutional

1    deprivations.  These many instances included the following specific cases:

2           (1) As set forth in more detail in the complaint filed in *Howie v. Nevada*

3    *County, et al*, 2:18-CV-3146, on or about January 11, 2018, Christopher

4    Howie had his leg broken at the WBCF, then was shackled and placed in a

5    cell all night, then medical staff ignored Mr. Howie's serious medical

6    condition and falsified the jail medical records about his condition, then

7    WBCF personnel refused Mr. Howie's repeated request to be taken to an

8    emergency medical room for treatment, and then WBCF personnel physically

9    wheeled Mr. Howie out of the back door of WBCF and left him on the curb

10   outside the jail unable to fend for himself;

11          (2) As set forth in more detail in the complaint filed in *Cavender v. Nevada*

12   *County, et al*, 2:19-CV-1050, on or about June 20, 2018, Sonya Cheyenne

13   Cavender was an inmate at WBCF who promptly reported serious medical

14   (stroke) symptoms to WBCF correctional staff, but was treated with

15   indifference for 2-3 hours in her cell until she could no longer walk or support

16   herself, at which time the WBCF correctional staff wheeled Ms. Cavender to

17   a holding cell and placed her on a floor pad for another 2-3 hours until Ms.

18   Cavender was near death, and only then did the WBCF correctional

19   personnel call for an ambulance; and

20          (3) In 2017 and 2018, Mr. Stephen Woodward was an inmate at WBCF who

21   was denied medical care for a urological problem for over a year until he

22   contacted a lawyer who sent a letter to Nevada County Counsel demanding

23   that Mr. Woodward be sent to a urologist for his medical condition.

24   82.   Plaintiff is informed and believes, and on that basis alleges, that Defendants

25   Does 16-20, despite all of the foregoing specific instances of constitutional

26   deprivation of medical care for inmates (as well as other instances not pleaded

27

28                                         22

1   here), never took any corrective supervisory action for CMGC jail personnel.

2   83.    As a consequence of the factual allegations in paragraphs 79-82, Defendants

3   Does 16-20 failed, in whole or in part, to perform their Supervisory Duties.  As a

4   direct consequence of such failure, Plaintiff was denied timely medical services for

5   his serious medical emergency which is a violation of his rights under the Fourth,

6   Eighth and Fourteenth Amendments to the U.S. Constitution.

7   84.    The foregoing conduct of Defendants Does 16-20 were acts and omissions

8   under the color of state law that was the direct and proximate cause of the violation

9   of the constitutional rights of Plaintiff Peterson.

10   85.    As a direct and proximate result of the wrongful conduct of Defendants Does

11   16-20 as set forth above, Plaintiff Peterson has sustained general damages in excess

12   of $1,000,000, according to proof, including, but not limited to the: (a) physical pain

13   and suffering from the injuries to his body; (b) severe emotional and mental distress

14   caused by the use of unnecessary and excessive force while handcuffed and from the

15   physical injuries to his body, including feelings of helplessness, anxiety,

16   humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical

17   treatment; (d) loss of economic opportunity; and (e) cost of emotional and

18   psychological care and therapy.

19   86.    As a direct and proximate result of the foregoing conduct of Defendants Does

20   16-20, Plaintiff Peterson has been forced to file this action under 42 U.S.C. §1983,

21   and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

22   87.    The foregoing acts and omissions of Defendants Does 16-20 were committed

23   with unbridled malice that was despicable and done with intentional disregard for

24   Plaintiff Peterson's physical and mental person.  As a result, punitive damages

25   should be awarded against Defendants Does 16-20.

26

27

28                                                   23

## SEVENTH CAUSE OF ACTION

### Defendant Correctional Medical Group Companies, Inc.

### Municipal Liability for Violation of Plaintiff's Constitutional Rights
#### (Deliberate and Callous Disregard for Inmate Medical Problems)

88.   Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

89.   Defendant CMGC has failed to either follow the PPPs adopted by Defendants Nevada County as alleged in paragraphs 10-14 and NCSD and/or failed to establish and follow its own comparable policies, practices and procedures for the timely and effective provision of medical services for detainees and inmates at the Jail as alleged in paragraphs 15-17.

90.   Defendant CMGC has failed to adequately train its personnel in the PPPs and/or the applicable PPPs or its own policies, practices, and procedures regarding the timely and effective provision of medical care for inmates.

91.   Defendant CMGC has failed to adequately monitor or enforce the applicable PPPs and/or its own policies, practices, and procedures for the timely and effective provision of medical care for inmates at the Jail.

92.   Defendant CMGC has failed to adequately supervise its personnel regarding the timely and effective provision of medical care for inmates at the Jail.

93.   Plaintiff is informed and believes, and on that basis alleges, that CMGC has had an unconstitutional policy and/or practice of denying and/or delaying medical care at the WBCF that constituted a deliberate and callous indifference to the medical needs of inmates as described in paragraphs 79-82.

94.   Plaintiff is informed and believes, and on that basis alleges, that there have been other instances of deliberate and callous indifference by Defendant CMGC to the medical needs of inmates in addition to those set forth in paragraphs 79-82. Together, all of these instances of deliberate and callous indifference to medical

24

needs of inmates demonstrate a persistent pattern of wrongful conduct by Defendant CMGC.

95.     It was known and/or obvious to Defendant CMGC that the acts and omissions described in paragraphs 89-94 would be likely to cause serious violation of the constitutional rights of inmates to timely and effective medical care.

96.     The acts and omissions in paragraphs 89-94 were done under the color of state law and they were the direct and proximate cause of the violation of the constitutional rights of Plaintiff.  Plaintiff is informed and believes, and on that basis alleges, that such acts and omissions existed for a substantial period prior to the institution of this action and that these acts and omissions continue until the present time.  As a consequence, Defendant CMGC's acts and omissions in paragraphs 89-94 constitute deliberate indifference to, and a callous disregard for, the constitutional rights of inmates in the Nevada County Jail.

97.     As a direct and proximate result of the wrongful acts and omissions of Defendant CMGC as set forth above, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and psychological care and therapy.

98.     The foregoing acts and omissions of Defendant CMGC were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Peterson's physical and mental person.  As a result, punitive damages should be awarded against Defendant CMGC.

99.     As a direct and proximate result of the foregoing conduct of CMGC, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

## EIGHTH CAUSE OF ACTION

### Defendants Nevada County, NCSD, Does 6-10, CMGC, and Does 16-20

### Conspiracy to Violate Plaintiff's Constitutional Rights Under 42 U.S.C. §1983

100.   Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

101.   Plaintiff is informed and believes, and thereon alleges, that Defendants Nevada County, NCSD, Does 6-10, CMGC, and Does 16-20 agreed and knowingly and willfully conspired among themselves to perpetrate the unlawful conduct described in the Second through Seventh causes of action.

102.   As a direct and proximate result of the wrongful acts and omissions of Defendants Nevada County, NCSD, Does 6-10, CMGC and Does 16-20 as set forth above, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) severe emotional and mental distress caused by the use of unnecessary and excessive force while handcuffed and from the physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) cost of medical treatment; (d) loss of economic opportunity; and (e) cost of emotional and psychological care and therapy.

103.   The foregoing acts and omissions of Defendants Nevada County, NCSD, Does 6-10, CMGC and Does 16-20 were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Peterson's physical and mental person.  As a result, punitive damages should be awarded against Defendants Does 6-10, CMGC, and Does 16-20.

104.    As a direct and proximate result of the foregoing conduct of Defendants Nevada County, NCSD, Does 6-10, CMGC and Does 16-20, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

## STATE LAW CLAIMS

## NINTH CAUSE OF ACTION

### Defendants Does 1-5

### Intentional Infliction of Emotional Distress

105.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

106.    The acts and omissions of Defendants Does 1-5 as alleged in paragraphs 24-28 was extreme and outrageous conduct directed at Plaintiff that was calculated to cause Plaintiff severe emotional distress or was done with substantial certainty that Plaintiff would suffer severe emotional injury.

107.    As the direct result of the foregoing acts and omissions of Defendants Does 1 to 5, Plaintiff suffered significant emotional and psychological damage.

108.    As a direct and proximate result of the foregoing acts and omissions of Defendants Does 1-5, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition; (b) feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; and (c) the cost of emotional and psychological therapy.

109.    The foregoing acts and omissions of Defendants Does 1-5 were committed with unbridled malice that was despicable and done with intentional disregard for the emotional and psychological pain, suffering, and trauma it would cause Plaintiff.  As a result, punitive damages should be awarded against Defendants Does 1-5.

## TENTH CAUSE OF ACTION

### Defendants Doe 11-15

### Intentional Infliction of Emotional Distress

110.     Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

111.     The acts and omissions of Defendants Does 11-15  as alleged in paragraphs 24-28 was extreme and outrageous conduct directed at Plaintiff that was calculated to cause Plaintiff severe emotional distress or was done with substantial certainty that Plaintiff would suffer severe emotional injury.

112.     As the direct result of the foregoing acts and omissions of Defendants Does 11-15, Plaintiff suffered significant emotional and psychological damage.

113.     As a direct and proximate result of the foregoing acts and omissions of Defendants Does 11-15, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition; (b) feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; and (c) the cost of emotional and psychological therapy.

114.     The foregoing acts and omissions of Defendants Does 11-15 were committed with unbridled malice that was despicable and done with intentional disregard for the emotional and psychological pain, suffering, and trauma it would cause Plaintiff.  As a result, punitive damages should be awarded against Defendants Does 11-15.

## ELEVENTH CAUSE OF ACTION

### Defendant Doe 21

### Negligence

115.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

116.    Defendant Doe 21 was a GVPD officer involved with the arrest and transport of Plaintiff Peterson to the WBCF.  As a consequence, this Defendant Doe 21 had a duty to exercise his authority and dominion over Plaintiff in a reasonable manner.

117.    Defendant Doe 21 breached the foregoing duty by the acts and omissions described in paragraphs 19-22.

118.    As the direct result of the foregoing breach by Defendant Doe 21 of his duty to Plaintiff, Plaintiff suffered serious physical and mental injury.

119.    As a direct and proximate result of the foregoing acts and omission of Defendant Doe 21, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

120.    The foregoing acts and omissions of Defendant Doe 21 were committed with a reckless and callous disregard for the physical, emotional and psychological pain, suffering, and trauma it would cause Plaintiff, and was despicable.  As a result, punitive damages should be awarded against Defendant Doe 21.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TWELFTH CAUSE OF ACTION

### Defendant Doe 21

### Interference With Plaintiff's Constitutional Rights
### Under California Civil Code §52.1(b)

121.   Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

122.   Defendant GVPD officer Doe 21 committed acts and omissions that constituted threats, intimidation, and coercion directed at Plaintiff in violation of: (a) Plaintiff's substantive due process right to be free of punishment prior to adjudication of the charges for which Plaintiff was to appear under the US Constitution; (b) Plaintiff's rights under Article 1, Section 7 & 17 of the California Constitution; and (c) Plaintiff's right to timely and effective medical care.

123.   As a direct and proximate result of the foregoing acts and omission of Defendant Doe 21, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

124.   Pursuant to California Civil Code §52(a) and §52.1(b), Plaintiff is entitled to treble the amount of consequential damages that are proven.

125.   As the direct and proximate result of the foregoing conduct of Defendant Doe 21, Plaintiff is entitled to recover his costs and attorney's fees under Civil Code § 52(b) and § 52.1(h).

# THIRTEENTH CAUSE OF ACTION

## Defendant Doe 21

## Intentional Infliction of Emotional Distress

126.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

127.    The acts and omissions of Defendant Doe 21 as alleged in paragraphs 19-22 was extreme and outrageous conduct directed at Plaintiff that was calculated to cause Plaintiff severe emotional distress or was done with substantial certainty that Plaintiff would suffer severe emotional injury.

128.    As the direct result of the foregoing acts and omissions of Defendant Doe 21, Plaintiff suffered significant emotional and psychological damage.

129.    As a direct and proximate result of the foregoing acts and omissions of Defendant Doe 21, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition; (b) feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; and (c) the cost of emotional and psychological therapy.

130.    The foregoing acts and omissions of Defendant Doe 21 were committed with unbridled malice that was despicable and done with intentional disregard for the emotional and psychological pain, suffering, and trauma it would cause Plaintiff. As a result, punitive damages should be awarded against Defendant Doe 21.

## FOURTEENTH CAUSE OF ACTION

### Defendants Does 1-10

### (Failure to Provide Medical Care Under GC §845.6)

131.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

132.    Defendants Does 1-10 were public employees that had responsibility to provide medical care to inmates under Government Code §845.6.

133.    Defendants Does 1-10 failed to take reasonable action to provide Plaintiff with medical care.  As the direct result of this failure, Plaintiff suffered serious physical and mental injury.

134.    As a direct and proximate result of the foregoing acts and omissions of Defendants Does 1-10, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

# FIFTEENTH CAUSE OF ACTION

## Defendant Nevada County

### Respondeat Superior Liability Under California Government Code §815.2(a) and/or Civil Code §52.1

135.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

136.    Defendant Nevada County, which operates the NCSD and is the employer of Defendants Royal and Does 1-10, has full authority to train, supervise, and direct the actions of each of these defendants.  Defendants Royal and Does 1-10 in their official capacities and in the performance of their duties engaged in the acts and omissions alleged in paragraphs 19-28.

137.    Under California Government Code §815.2(a), Nevada County is liable for any injury that is proximately caused by the act or omission of its personnel within the scope of their duties, including all of the acts and omissions alleged in the Second through Fourth, Eighth, and Thirteenth through Fourteenth Causes of Action.

138.    Under California Civil Code §52.1, Nevada County is liable for any violation by its employees that committed acts and omissions that constituted threats, intimidation, and coercion directed at Plaintiff in violation of: (a) Plaintiff's substantive due process right to be free of punishment prior to adjudication of the charges for which Plaintiff was to appear under the US Constitution; (b) Plaintiff's rights under Article 1, Section 7 & 17 of the California Constitution; and (c) Plaintiff's right to timely and effective medical care.

139.    As a direct and proximate result of the wrongful acts and omissions of Defendants Royal and Does 1-10, for which Defendant Nevada County is liable under the doctrine of *respondeat superior* and/or California Government Code §815.6, Plaintiff has sustained general damages in excess of $1,000,000, according

34

to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

## SIXTEENTH CAUSE OF ACTION

### Defendant City of Grass Valley

#### Respondeat Superior Liability Under California Government Code §815.2(a) and/or Civil Code §52.1

140.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

141.    Defendant City of Grass Valley trained and employed Defendant Doe 21 as a police officer during all relevant times.  Under California Government Code §815.2(a), the City of Grass Valley is liable for any injury that is proximately caused by the act or omission of its personnel within the scope of their duties, including all of the acts and omissions alleged in the First, Eleventh, Twelfth, and Thirteenth Causes of Action.

142.    Under California Civil Code §52.1, the City of Grass Valley is liable for any violation by its employees that committed acts and omissions that constituted threats, intimidation, and coercion directed at Plaintiff in violation of: (a) Plaintiff's substantive due process right to be free of punishment prior to adjudication of the charges for which Plaintiff was to appear under the US Constitution; (b) Plaintiff's rights under Article 1, Section 7 & 17 of the California Constitution; and (c) Plaintiff's right to timely and effective medical care.

143.    As a direct and proximate result of the wrongful acts and omissions of

Defendant Doe 21 for which Defendant City of Grass Valley is liable under the doctrine of *respondeat superior* and/or California Government Code §815.6, Plaintiff has sustained general damages in excess of $1,000,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the deliberate indifference to his emergency medical condition, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

## SEVENTEENTH CAUSE OF ACTION
### Defendants CMGC and Does 11-20
### Medical Malpractice

144.    Plaintiff hereby incorporates by reference paragraphs 1-33, inclusive, as though set forth fully herein.

145.    Defendants CMGC and Does 11-20 were responsible for providing medical care for inmates at the Jail that met professional medical practices and standards.

146.    Defendants CMGC and Does 11-20 failed to comply with professional medical practices and standards in the treatment of Plaintiff's injuries by, *inter alia*, failing to: (a) diagnose Plaintiff's injury to his leg and other medical conditions; (b) send Plaintiff for emergency care or otherwise provide emergency medical treatment for Plaintiff's leg and other medical conditions; (c) provide Plaintiff with reasonable housing and care while he was in custody at the Jail; and (d) provide or arrange for medical transport of Plaintiff to an emergency facility.

147.    As a direct and proximate cause of this negligence and failure to meet applicable professional standards of care, Plaintiff suffered additional injury and additional pain and suffering.

148.   The foregoing acts and omissions of Defendants CMGC and Does 11-20 were committed with callous and wanton disregard that was despicable and done with full knowledge of the physical and mental pain and suffering to Plaintiff.  As a result, punitive damages should be awarded against Defendants CMGC and Does 11-20.

## PRAYER

**Wherefore**, Plaintiff prays for judgment against Defendants as follows:

1.   For general, consequential, and special damages in the sum set forth in each count according to proof;

2.   For punitive damages in a sum according to proof in Counts 1-4, 6-11, 13, and 17;

3.   For reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 in Counts 1-8;

4.   For reasonable attorney's fees and costs pursuant to California Civil Code §52(b) and §52.1(h) in Count 12;

5.   For treble damages (3x consequential) pursuant to §52(a) and §52.1(b) in Count 12;

6.   For cost of suit herein incurred for all counts; and

7.   For such other and further relief as the Court deems just and proper.

Dated: August 9, 2019                          Respectfully,

By:  /s/  Patrick H. Dwyer
Patrick H. Dwyer, SBN 137743
P.O. Box 1705; 17318 Piper Lane
Penn Valley, CA  95946
Tel: (530) 432-5407
Fax: (530) 432-9122
pdwyer@pdwyerlaw.com