Patrick H. Dwyer, SBN 137743
P.O. Box 1705
Penn Valley, CA 95946
Tel: (530) 432-5407;Fax: (530) 432-9122
Email: pdwyer@pdwyerlaw.com
Attorney for Plaintiff John David Peterson

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John David Peterson, an individual,<br>　　Plaintiff<br>　　　v.<br>Nevada County, California, a county<br>　　government and operator of the<br>　　Nevada County Sheriff's Dept., and<br>Wellpath Management, Inc.,<br>　　Defendants.<br>. | CASE NO.: 2:19-CV-0949-JAM-EFB<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>Date: July 26, 2022<br><br>Time: 1:30 pm<br><br>Courtroom: 6, 14th Floor<br><br>The Honorable John A. Mendez |

　　Plaintiff John David Peterson ("Plaintiff") submits the following Reply to Defendant Nevada County's Opposition (ECF 57) to Plaintiff's motion for leave to file the proposed Second Amended Complaint ("SAC")(ECF 53).[1]

　　Plaintiff notes that Defendant Wellpath did not file an opposition or non-

---

[1] Plaintiff apologizes for mistakenly reciting his efforts to meet & confer with Defendants regarding the proposed SAC in the opening paragraph of Plaintiff's Memorandum (ECF 53-1, p. 1) instead of in the Notice of Motion and Motion as requested in the Scheduling Order (ECF 48 at p. 3).

opposition, and further, that Defendant Nevada County only opposes the inclusion of the proposed new Third Cause of Action in the SAC.  Opposition at 1:19-24.

I.  **Plaintiff was Diligent**

A.  **Applicable Law**

Plaintiff concurs with Defendant's legal authority that once a scheduling order has been filed, a party desiring to amend must show "good cause" for moving to amend as required by FRCP 16.  Opposition at p. 2:27 to 4:23.   However, the criteria for deciding whether to allow an amendment are still governed by FRCP 15 as discussed in Plaintiff's Memorandum (ECF 53-1) at 2:1 to 3:19.  What changes with the "good cause" standard under FRCP 16 is the *emphasis* the court places on whether the moving party was diligent.   That is why Plaintiff addressed the question of "undue delay" in his Memorandum as the first and most important of the FRCP 15 criteria for amendment. Memorandum at pp. 3:21 to 8:2.

1.  **Undue Delay**

What is most important in evaluating the timeliness of a motion to amend is the amount of time between the *date of discovery of the relevant facts* supporting a new cause of action and *the filing of the motion to amend*, not the time between the cutoff date in a scheduling order and the filing of the motion to amend.[2]

---

[2]  Defendant is correct that Plaintiff discussed filing a draft version of the SAC in a meet & confer process on June 6, 2022.  However, Plaintiff was still uncertain at that time whether he had sufficient evidence to satisfy FRCP 11(b)(3)'s requirement that there be sufficient factual support. See the Supplemental Declaration of Patrick H. Dwyer, ¶ 3, 8.  That uncertainty was eliminated with the June 14, 2022, deposition testimony of Andrea Boucher as discussed below.

1

As stated by the Ninth Circuit, the district court's inquiry should begin with examining when the moving party knew or should have known the facts and theories raised by the amendment in relationship to the date of filing the motion. *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 954.

Furthermore, delay in filing a motion to amend, by itself, is insufficient to deny leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-86 (9th Cir. 1987). See also *U.S. v. Webb*, 655 F.2d 977, 980 (9th Cir.1981) (holding delay "alone no matter how lengthy is an insufficient ground for denial of leave to amend").

### 2. The Importance of Undue Delay is Relative to Other Criteria

When deciding whether any "undue delay" might be fatal to the motion to amend, the Ninth Circuit looks to whether "permitting an amendment would ... produce an undue delay in the litigation," such as delaying the "operative trial schedule." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). In addition, the court should examine whether the undue delay is prejudicial to the other party such that it would "greatly change the parties' positions in the action, and require the assertion of new defenses." *Phoenix Solutions, Inc. v. Sony Elecs., Inc.*, 637 F. Supp. 2d 683, 690 (N.D. Cal. 2009). Finally, a court should draw all inferences in favor of granting leave to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

### B. The Facts Concerning the Timing of Plaintiff's Motion

Defendant contends *without factual support* that Plaintiff could have sought

2

leave to amend to add the new Third Cause of Action before the scheduling order. Opposition at 4:24-27. This argument clearly has no merit. At the time of the filing of the scheduling order, Plaintiff had been through one round of written discovery and had taken the depositions of Nevada County Sheriff's Department ("NCSD") officers Stanley and Osborne.[3] No depositions had yet been taken of any Wellpath employees and Plaintiff did not have *any evidence* to prove that Nevada County was the *moving force* behind Wellpath's wrongdoing, which is the basis for the proposed Third Cause of Action. Supp. Dwyer Dec., ¶ 3.

Nevada County next contends without factual support that Plaintiff could have filed the SAC after December 16, 2021. Opposition at 5:7-10. Although the depositions of Wellpath employees Tirpak and Adams had been completed, they only yielded evidence about Wellpath's policies, not any evidence that Nevada County was the *moving force* behind the wrongful behavior of Wellpath employees. Supp. Dwyer Dec., ¶ 4.

Nevada County never propounded any discovery of Wellpath, leaving Plaintiff to do all of the discovery of Wellpath's side of the story. Indeed, counsel for

---

[3] Nevada County has contended from the outset that Wellpath was solely responsible for Plaintiff's medical care and that NCSD jail officers had obtained clearance from Wellpath medical personnel for the release of Mr. Peterson, and thus, it was not liable. This assertion was ostensibly corroborated by the testimony of Officer Ryan Stanley and Deposition Ex. No. 3. Supp. Dwyer Dec., ¶2. So, Plaintiff had to turn to Wellpath employees to learn the truth of the matter. Due to the lack of cooperation of Wellpath's counsel in producing Wellpath's employees for deposition, this process took eighteen months. That was not Plaintiff's fault. Dwyer Dec. (ECF 53-2), ¶¶ 6-7.

Nevada County did not ask a single question of any Wellpath employee until June 14, 2022. Supp. Dwyer Dec., ¶ 9.  For example, at the deposition of Wellpath PA Amanda Tirpak on August 31, 2021,[4] Ms. Tirpak *denied any knowledge or even the existence* of the form marked as Deposition Ex. 3.[5]  See Supp. Dwyer Dec., ¶ 5, Ex. C, Tirpak Depo., p. 77:8-78:1.  Ms. Tirpak was also unable to answer whether there was any medical procedure for determining if an inmate was ready for release. Tirpak Depo., p. 78:11 to 84:7.  Plaintiff then took the deposition of Wellpath HSA Lori Adams in December 2021.  Ms. Adams also said she was unfamiliar with Deposition Ex. 3.  Supp. Dwyer Dec., ¶ 6, Ex. D, Adams Depo., p. 14:14 to 16:4.  She also had no memory of a phone call from Officer Stanley about "physical" medical clearance for Plaintiff, even though he supposedly wrote her name ("Lori") on Deposition Ex. 3.  Adams Depo., p. 24:13 to 26:11; 33:6 to 35:12.  Ms. Adams further testified that Wellpath only gave "clearance" concerning mental health problems: i.e., if the inmate needed a 5150 hold, not physical health as Officer Stanley had testified.  Adams Depo., p. 17:5 to 19:11.  However, Ms. Adams acknowledged that Wellpath medical personnel had authority to delay release of an inmate to prepare a medical discharge plan.  Adams Depo., p.74:9 to 78:1.

Plaintiff then served another set of interrogatories on March 7, 2022, which

---

[4] Ms. Tirpak is a physician assistant in charge of medical services for Wellpath at the county jail.  Laurie Tirpak was Wellpath's administrator in charge of its operations at the jail.

[5] Depo. Ex 3 is the only document supporting its contention that officers always called Wellpath personnel for medical clearance to release an inmate.

4

asked both Nevada County and Wellpath to explain the factual and/or legal basis for why each of them was not liable for Plaintiff's injuries. Each party answered by saying it had followed its respective policies and procedures and it was not liable, thereby "silently" pointing the finger at the other. In particular, Nevada County claimed that it was not liable because correction staff "checked with competent medical staff prior to completing the release [of Plaintiff] and received the go-ahead to complete the release process". Supp. Dwyer Dec., ¶ 7, Ex. E.

At this point, with *completely contradictory stories* from Nevada County and Wellpath, Plaintiff proceeded with deposing other Wellpath employees  This process was delayed again and again by counsel for Wellpath. Dwyer Dec. (ECF 53-2), ¶¶ 6-7. Finally, on May 26, 2022, Plaintiff was able to arrange for the depositions of three more Wellpath nurses: Tindall (6/1/22), Falltrick (6/14/22), and Boucher (6/14/22). Although Plaintiff suspected that Nevada County jail personnel were somehow responsible for the behavior of Wellpath personnel at the jail, Plaintiff did not have any evidence to prove this. Thus, Plaintiff was not in a position under FRCP 11(b)(3) to file a motion to amend when these depositions were noticed. Supp. Dwyer Dec., ¶ 8.

It was the testimony of Ms. Boucher on June 14, 2022, that provided Plaintiff with sufficient evidence for the proposed Third Cause of Action. Ms. Boucher testified that Wellpath personnel *had no say over* the release of inmates with physical medical conditions, that the timing of any release from custody was *solely the decision of NCSD officers*, and that NCSD correctional officers *did not call for*

5

*pre-release clearance* regarding an inmates physical medical condition. Supp. Dwyer Dec., ¶ 9, Ex. F, Boucher Depo., pp. 40:3 to 44:14. This testimony *completely contradicts* Nevada County's defense that its jail officers always checked with Wellpath about an inmate's physical medical condition before release.

The obvious discrepancy between Ms. Boucher's testimony and that of NCSD Officer Stanley finally brought defense counsel "off the bench". Defense counsel tried to get Ms. Boucher to change her testimony, but she was steadfast that jail officers were the sole decision makers about an inmate's release, regardless of physical medical condition. Boucher Depo., pp 45:17 to 50:2.

For over two years, Nevada County had every opportunity to propound discovery to Wellpath and explore the factual issues around its medical policies, but it did nothing. Plaintiff was not responsible for the delay in taking Ms. Boucher's deposition and was not responsible for Nevada County's failure to uncover the contradictory facts from Wellpath personnel. Obviously, Nevada County and its jail personnel had always known the truth of the matter. Sometimes, crucial facts are not discovered until the last 1-2 depositions. That is what happened here. It was not Plaintiff's lack of diligence that caused the delay.

II. **Allowing the SAC Will Not Prejudice Defendant**

Defendant Nevada County asserts that it will be prejudiced by the proposed Third Cause of Action. However, Defendant fails to support this claim with any meaningful specifics. See Declaration of Matthew Gross in support of Defendant's Opposition (ECF 57-1), ¶9. Mr. Gross states that he would need additional written

6

discovery about Wellpath's medical policies.  This is nonsense: Wellpath produced its entire set of medical polices in August, 2020, including the Wellpath Policy manual alleged in the SAC at ¶¶ 27-33.  There is no need for further written discovery to obtain the Wellpath policy documents.

Defense counsel further asserts in his Declaration at ¶9, that he would "possibly [notice] a couple of depositions to the person most knowledgeable about Wellpath's medical policies."  The person most knowledgeable is Wellpath HSA Laurie Adams.  She was deposed by Plaintiff in October 2021, at which time Plaintiff delved into the specific Wellpath polices that were relevant to Plaintiff's case.  See the Proposed SAC at ¶¶ 27-33.  However, Defense counsel declined to ask any questions of Ms. Adams.  Supp. Dwyer Dec., ¶ 9; Adams Depo., p. 79:23.

As discussed above, Plaintiff also deposed Ms. Tirpak, Wellpath's Physician Assistant at the jail and the medical person with primary responsibility for the medical care for Mr. Peterson.  Again, Mr. Gross declined to ask any questions of Ms. Tirpak.  Supp. Dwyer Dec., ¶¶ 5, 10; Tirpak Depo., p. 94:3.

Altogether, there have been six depositions of Wellpath medical personnel by Plaintiff, all of which inquired into the relevant policies of Wellpath.  Defense counsel never noticed a deposition of any Wellpath employee and never asked any questions in any of these depositions until June 14, 2022, when Plaintiff was finally able to depose Wellpath RN Andrea Boucher and her testimony contradicted Nevada County's main defense.  Supp. Dwyer Dec., ¶ 9, Ex. F, Boucher Depo., p. 40:3 to 44:4; 45:17 to 50:3.

Without any specific discovery identified by Nevada County as being necessary to defend against the proposed Third Cause of Action in the SAC, there is *no showing of any prejudice* to Defendant and Plaintiff's motion should be granted.

### III.   The Third Cause of Action in the SAC is Not Futile

Defendant contends that Plaintiff's proposed Third Cause of Action is futile because Plaintiff has already pleaded a *Monell* claim against Nevada County. Opposition at 6:21 to 7:3.  Defendant's argument fails because it does not distinguish between the causation in the existing *Monell* claim against Nevada County and the causation in the proposed Third Cause of Action.  The existing First Cause of Action is premised upon the failure of Nevada County to have constitutional Policies (SAC ¶46, the failure to train (SAC ¶47), and the failure to enforce Wellpath's contractual obligations and medical policies, procedures, and practices (SAC ¶ 48), thereby directly causing Plaintiff's constitutional injury.

In contrast, the proposed Third Cause of Action alleges that Wellpath's employees Amanda Tirpak and Lori Adams violated Plaintiff's constitutional rights, and thus were the immediate cause of Plaintiff's injuries, but that the *moving force behind their wrongful conduct* was Nevada County's practice of releasing inmates with serious medical conditions without first obtaining medical clearance from Wellpath medical personnel as testified to by Ms. Boucher.

Thus, the existing First Cause of Action is premised upon direct causation and the proposed new Third Cause of Action is premised Nevada County being the moving force behind the wrongful actions of Wellpath personnel. This is exactly the

situation in *Hagan v. California Forensic Medical Group*, (E.D. Cal 2009) 2009WL728465 at p. 7, where the Court found that a separate and distinct cause of action could be pleaded against the municipality where its failures in policies and practices were the moving force behind the medical provider's failures.

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweany v. Ada County, Idaho,* 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). In other words, a proposed cause of action is futile only if it is certain that it would otherwise be dismissed for failure to state a claim. *DCD Programs, Ltd. v. Leighton*, 833 F. 2d 183, 188 (9th Cir.1987)).

Defendant has failed to show that Plaintiff's proposed new Third Cause of Action fails to state a claim as a matter of law or as a matter of fact. What Nevada County does not like about the proposed Third Cause of Action is that it can be held liable for the wrongdoing of Wellpath employees if a jury finds that Nevada County's failures were *a moving force* behind the wrongdoing of Tirpak and Adams.

The proposed Third Cause of Action is important because the jury will need to apportion liability between the two defendants and it will not be able to do this correctly unless Plaintiff can present evidence that Nevada County's failures were a moving force behind the wrongful conduct of Ms. Tripak and Ms. Adams.

9

IV.  **Conclusion**

Plaintiff diligently prosecuted this action.  Yes, it took until the end of the discovery period, but Ms. Boucher finally spoke candidly on June 14, 2022. It was at that time that, in the opinion of his counsel,  Plaintiff obtained sufficient evidence under FRCP 11(b)(3) to support the filing of the proposed Third Cause of Action in the SAC.  The Motion was promptly filed after an additional meet & confer.

Based upon the foregoing, Plaintiff should be granted leave to file the proposed SAC.


Dated: July 8,  2022                                    Respectfully,

                                                        By:  /s/  Patrick H. Dwyer
                                                        Patrick H. Dwyer, counsel for Plaintiff



[Note: The Boucher deposition transcript was not ready when either the Motion or Opposition were filed. Thus, this is new factual material about which Defendant may be entitled to make a supplemental filing.]